UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERALD THOMAS,

        Plaintiff,

vs.

DAVID KOMJATHY, *et al.*,

        Defendants.
                                          /

Case No. 1:08-cv-574

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Deborah Cary and Terry Arnold (docket no. 42).

**I.    Background**

Plaintiff filed a verified complaint in the Eastern District of Michigan naming four defendants: Michigan Department of Corrections (MDOC); Dr. David Komjathy; MDOC Nurse Deborah Cary; and MDOC Nurse Terry L. Arnold III. *See* Compl. (docket no. 1). The case was subsequently transferred to the Western District. *See* Order of Transfer (docket no. 5). After screening the case pursuant to the Prison Litigation Reform Act (PLRA), the court dismissed the MDOC and Dr. Komjathy, and ordered service to be made on Nurse Cary and Nurse Arnold. *See* Opinion and Order (docket nos. 11 and 12). Plaintiff appealed this order to the Sixth Circuit Court of Appeals, which dismissed the appeal for lack of jurisdiction. *See Thomas v. Komjathy*, No. 08-2064 (Order) (6th Cir. Sept. 26, 2008).

Plaintiff filed a verified amended complaint directed at Nurse Cary and Nurse Arnold, which contained the following allegations. *See* Amend. Compl. (docket no. 26). Plaintiff has been diagnosed with "Auto Immune Hepatitis." *Id.* at ¶ 4. At some point in time (not identified by plaintiff), he was at the Southern Michigan Correctional Facility at Jackson (JMF), and asked Nurse Cary for help in copying his medical file, explaining that he had no money to pay for the copies. *Id.* When asked why he needed the copies, plaintiff told Nurse Cary:

> that I needed the order written by my liver specialist plus a few other papers so, my lawyer could have them to better defend me against the person that I'm suing [sic].

*Id.* In response to this request, Nurse Cary told plaintiff "to give her a few days." *Id.*

On May 12, 2007, plaintiff went to health care with bad chest pain. *Id.* at ¶ 5. Nurse Cary was working that evening and told him to come back to be assessed by her. *Id.* Sometime later, Nurse Cary gave plaintiff some antacid tablets and asked why he needed the medical copies. *Id.* Plaintiff stated as follows:

> *this time I told her a different lie*, she told me I was lying and I came clean, told her than I was in the process of filing an [sic] complaint, and allegation form to the state of Michigan department of community health bureau of health professions against JMF medical staff for not doing what my liver specialist said for them to do . . . [sic] which was drop my dosage in prednisone, take/monitor my liver enzymes thru my blood every two weeks but, the medical staff failed to do so. [T]hat's when she tried to manipulate me by grabbing my penis to get me to not fill out those grievances and to the bureau of health professions, but once I jumped back, and looked at her the wide - questioning eyes - she grabbed my penis again, this time I jumped all the way back, and that's when she left the room & I followed right behind her.

*Id.* (emphasis added). Plaintiff was sent back to his unit before 8:00 p.m. that evening. *Id.* He was later cuffed and placed in temporary segregation at JMF. *Id.* According to plaintiff, Nurse Cary wrote him a major misconduct ticket for sexual assault "to cover up her inappropriate actions." *Id.*

2

On May 15, 2007, plaintiff was transferred out of JMF to Ionia Maximum Correctional Facility (ICF). *Id.* at ¶ 6. On his ride out to ICF, plaintiff was told by an unidentified person that Nurse Cary conspired with her supervisor, Nurse Arnold, "to get [plaintiff] out of JMF." *Id.*[1] An unidentified person also told plaintiff that Nurse Arnold got him "medically cleared illegally" so that he would be sent out of JMF in violation of the *Hadix* case. *Id.*[2]

Plaintiff alleged that defendants violated his First, Eighth and Fourteenth Amendment rights, as well as "violating 127 S. Ct. 910 (2007) intended [sic] to provoke this prisoner into creating a disturbance representing a threat to the good order/security of this facility."[3] *Id.* at p. 11. Plaintiff seeks compensatory and punitive damages in excess of $1.5 million. *Id.* at pp. 11-12. Finally, plaintiff seeks injunctive relief (1) that the MDOC transfer him to his liver specialist, and (2) that "the MDOC expunge the fabricated ticket written by Deborah Cary out of my institutional file, and my level dropped down back to the level at which this incident occurred." *Id.* at p. 12.

## II.     Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim,

---

[1] Plaintiff sometimes refers to Nurse Arnold as "Nurse Terry."

[2] Plaintiff's complaint refers to the ongoing class action of *Hadix v. Caruso*, 4:92-cv-110 (W.D. Mich.). To the extent that plaintiff alleged that he was transferred in violation of an injunction or other order issued in the *Hadix* litigation (i.e., that he was transferred to a prison which was farther away from his liver specialist at the University of Michigan), his claim should be addressed in *Hadix*.

[3] Plaintiff's amended complaint refers to the Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199 (2007). This decision, which addressed the issue of exhaustion of administrative remedies under the PLRA, is not relevant to plaintiff's claims raised in this action.

a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants have moved for summary judgment on various grounds. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

4

### III. Discussion

#### A. Deliberate indifference to plaintiff's medical needs

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer*, 511 U.S. at 834. A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff does not claim that either Nurse Cary or Nurse Arnold were deliberately indifferent to any medical needs. Plaintiff's only allegation related to his medical treatment is his claim that Nurse Arnold "got me medically cleared illegally so that I'll be sent out of JMF" and that he is now farther away from his liver specialist. *See* Amend. Compl. at ¶¶ 6 and 7. A prisoner, of course, generally has no right to placement in a particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State"); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("[w]hatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all"). To the extent that plaintiff's allegation raises an Eighth Amendment claim, such a claim consists of a disagreement between himself and the prison medical staff regarding the availability of proper treatment for his liver condition (i.e., whether his liver condition can be treated by the medical staff at a different correctional facility). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category. There are doctors throughout the state who are qualified to provide treatment for a liver condition. There is no allegation here that plaintiff has been denied liver

treatment or that it is not available. Plaintiff has not even alleged that his treatment was changed, only his doctor. This hardly states a claim. And even if there was a new medical treatment undertaken, this by itself states no claim. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"). The court should grant defendants' motion for summary judgment on the Eighth Amendment claim for deliberate indifference.

**B.    Cruel and unusual punishment**

Plaintiff alleged that Nurse Cary engaged in cruel and unusual punishment when she grabbed his penis during their meeting on May 12, 2007. The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson*, 503 U.S. at 5 (quoting *Whitley*, 475 U.S. at 319); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In analyzing plaintiff's claims, the court must examine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 6. Courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7, quoting *Whitley*, 475 U.S. at 321. As the Sixth Circuit summarized in *Moore*, 2 F.3d at 700, "To determine whether a claim of assault rises to a

level of constitutional magnitude, a court must consider the reasons or motivation for the conduct, the type of force used, and the extent of the inflicted injury." While an Eighth Amendment claim need not include a "significant injury," a *de minimis* use of physical force will not support such a claim unless the force used is "of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10. *See also*, *Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir. 2004) ("the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind'"); *Moore*, 2 F.3d at 700-01.

For purposes of resolving this motion for summary judgment, the court must view the facts in the light most favorable to plaintiff, which, in this case, means that the court will accept the facts as alleged in plaintiff's verified amended complaint. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).[4] Nevertheless, plaintiff's claim fails. Before plaintiff can bring an Eighth Amendment claim, he must show that he suffered a physical injury. *See* 42 U.S.C. § 1997e(e) ("[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Jarriett v. Wilson*, 162 Fed. Appx. 394, 400 (6th Cir. 2005). Assuming that Nurse Cary grabbed his penis, plaintiff presented no evidence that he suffered any physical injury. Isolated or relatively minor incidents of alleged sexual abuse or harassment do not

---

[4] Arguably, a factual dispute exists as to whether Nurse Cary grabbed plaintiff's penis. Nurse Cary has submitted an affidavit in which she denies grabbing plaintiff's penis. *See* Cary Aff. at ¶¶ 5-9 (docket no. 43-7). While plaintiff alleged in his verified amended complaint that Nurse Cary grabbed his penis, his testimony at a subsequent major misconduct hearing contradicts this claim. *See* discussion, § III.C., *infra*.

8

rise to the level of cruel and unusual punishment sufficiently serious to constitute an Eighth Amendment violation. *See Jackson v. Madery*, 158 Fed. Appx. 656, 661 (6th Cir. 2005) (no Eighth Amendment violation where female guard rubbed and grabbed male prisoner's buttocks during a shakedown); *Allen v. Johnson*, 66 Fed. Appx. 525 (5th Cir. 2003) (even if it is assumed that a guard touched a prisoner in a sexual manner during routine pat-down searches, such allegations are not sufficiently serious assaultive behavior to show a constitutional deprivation); *Boddie v. Schneider*, 105 F.3d 857, 859-60 (2nd Cir. 1997) (no Eighth Amendment violation where female guard squeezed a male prisoner's hand, touched his penis, made sexually suggestive comments, and twice pinned him to a door with her body). Accordingly, Nurse Cary is entitled to summary judgment with respect to plaintiff's claim that she violated the Eighth Amendment by grabbing his penis during an examination.

### C. First Amendment Retaliation Claim

Plaintiff alleged that Nurse Cary retaliated against him by charging him with a major misconduct of sexual assault. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S.

9

274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

Plaintiff alleged that his protected activity was gathering information to file a complaint against JMF medical staff for failing to follow the instructions of his liver specialist, and that Nurse Cary retaliated against this activity by taking the adverse action of grabbing his penis and then issuing a sexual assault major misconduct against him. However, plaintiff cannot prevail on his retaliation claim because the hearing officer found *him* guilty of the major misconduct of sexual assault. *See* Major Misconduct Report (docket no. 43-7). The hearing officer based his decision on the following facts. Nurse Cary assessed plaintiff at 8:00 p.m. on May 12, 2007. *Id.*[5] During the assessment: plaintiff made non-relevant remarks; when Nurse Cary scooted her chair to the blood pressure machine, plaintiff moved his chair up so that Cary could not move; plaintiff rubbed his right leg against the inside of Nurse Cary's left leg; and, when Cary moved her chair to type on the computer, plaintiff stuck his tongue out at her and made suggestive remarks (i.e., "just look -- look at what I got for you, just look"). *Id.* Cary responded by calling for an officer. *Id.* At the major misconduct hearing, plaintiff did not claim that Nurse Cary grabbed his penis; rather, he claimed that he was not in the health care center at that time and could not have committed the offense. *Id.* Plaintiff later admitted that he was at health care at 7:55 p.m. *Id.* Plaintiff's testified that "the only physical touching between he and the nurse was when she checked his blood pressure and took his

---

[5] The court notes that this finding contradicts plaintiff's allegation that he was not with Nurse Cary at that time, i.e., he was sent back to his unit "before 8:00 p.m." *See* Amend. Compl. at ¶ 5.

temperature." *Id.*[6] Plaintiff was found guilty of sexual assault on a staff victim and sentenced to 15 days of detention. *Id.*

Under these circumstances, plaintiff's retaliation claim fails. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005), quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994). As in *Jackson*, the misconduct report shows that there was evidence to support the charges. *See Jackson*, 158 Fed. Appx. at 662; Major Misconduct Report (docket no. 43-7). Accordingly, defendants are entitled to summary judgment on this count.[7]

### D. Fourteenth Amendment claim

Plaintiff apparently claims a Fourteenth Amendment due process violation arising from Nurse Cary's alleged filing of a "false misconduct" charge. This claim is without merit. As previously discussed, the major misconduct charge against plaintiff was not "false;" the hearing officer found plaintiff guilty of sexual assault. Even if he had been found not guilty, plaintiff does not have a constitutionally protected right to be free from "false misconduct" charges that may lead to disciplinary action. "The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir.1986). *See Cromer v. Dominguez*, No. 03-2269, 2004 WL 1447648 at *2 (6th Cir. June 18, 2004) (adopting rule expressed in *Freeman*); *Jackson v. Hamlin*, No. 02-2040, 2003 WL 1194246 (6th Cir. March 11, 2003) (same); *Munson v.*

---

[6] The court notes that plaintiff's testimony regarding the absence of "physical touching" directly contradicts his own later claim that Nurse Cary grabbed his penis during the assessment.

[7] The court having found no constitutional violations by the MDOC defendants, it is unnecessary to address their claims for qualified immunity.

*Burson*, No. 98-2075, 2000 WL 377038 at *3-4 (6th Cir. April 7, 2000) (same). For these reasons, defendants are entitled to summary judgment on plaintiff's Fourteenth Amendment claim.

### IV. Recommendation

Accordingly, I respectfully recommend that defendants' motion to dismiss (docket no. 42) be **GRANTED** and this action dismissed.


Dated: November 4, 2010                    /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).